# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **VALERIE HILL, JACQUELINE ROBINSON, and SEARCY CRAWFORD, on behalf of themselves and all others similarly situated,** ) ) ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) ) | **Case No.:  2:09-CV-1827-VEH** |
| **T-MOBILE USA, INC.,** ) ) | |
| **Defendant.** ) | |

---

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

This personal property action, involving Plaintiffs' lost or stolen cell phones, was initiated against Defendant T-Mobile USA, Inc.'s ("T-Mobile") on September 14, 2009.  (Doc. 1).  The court's jurisdiction has been invoked pursuant to 28 U.S.C. § 1332(d), *i.e.*, the Class Action Fairness Act of 2005 ("CAFA").  (Doc. 1 ¶ 3).  The three named plaintiffs that remain in the lawsuit are Valerie Hill ("Ms. Hill"), Jacqueline Robinson ("Ms. Robinson"), and Searcy Crawford ("Ms. Crawford").

(Doc. 39 at 1).[1]

These plaintiffs not only seek conversion and unjust enrichment claims against T-Mobile individually, but also they intend to represent a nationwide class of individuals who are similarly situated to them.  (*See generally* Doc. 43).  The court has before it Plaintiffs' Motion for Class Certification (Doc. 51) (the "Motion to Certify") filed on February 14, 2011, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure <u>on the claim of conversion only</u>.  (*See* Doc. 51 at 1 ("Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, plaintiffs Jacqueline Robinson and Searcy Crawford ("plaintiffs") move this Honorable Court for an order certifying a nationwide class action, for the recovery of damages as a result of the Defendant's conversion of class members mobile devices.")).  Plaintiffs' supporting evidence and brief were filed under seal on February 15, 2011.  (Docs. 53, 54).

T-Mobile filed a Motion to Exclude the Opinions of Richard Goudeau, Plaintiffs' expert witness, (Doc. 55) (the "Motion to Exclude") on March 16, 2011.  T-Mobile also filed its submission in support of its Motion to Exclude (Doc. 58) and its opposition to the Motion to Certify (Doc. 59), both under seal, on March 17, 2011.  Plaintiffs followed with their reply materials (Docs. 63, 64) in support of the Motion

---

[1]  On August 18, 2010, on Plaintiffs' unopposed  motion (Doc. 37), the court dismissed without prejudice the claims of Plaintiffs Jonathan Barker, Leslie Blakely, Erica Bunker, Deena Crutchfield, and Melissa Little.  (Doc. 39 at 1).

to Certify filed on March 31, 2011. Plaintiffs have not responded to the Motion to Exclude, and the deadline for such response has passed. (*See* doc. ___).

On April 11, 2011, T-Mobile filed a Motion To Strike Plaintiffs' Reply Brief in Support of Motion for Class Certification, or, in the Alternative, To Allow T-Mobile To File a Sur-Reply Brief on Certain Issues (Doc. 66). On April 13, 2011, the court granted T-Mobile's alternative relief requested and gave it until 5:00 p.m. on Monday, April 18, 2011, to file a sur-reply. (Doc. 67 at 2). Subsequently, T-Mobile filed its sur-reply brief under seal on April 19, 2011. (Doc. 70).

On April 29, 2011, Plaintiffs filed a Motion for Leave to Submit Supplemental Authority Handed Down Since the Briefing Schedule Closed. (Doc. 71). The court granted this motion and Plaintiffs filed their supplemental authority on May 3, 2011. (Doc. 73). T-Mobile made a similar request (Doc. 74) on May 4, 2011, which the court also granted, and T-Mobile filed its supplemental authority on May 4, 2011. (Doc. 75).

The court has received no further briefing from the parties. Accordingly, the Motion to Certify and the Motion to Exclude are now both under submission. For the reasons explained below, the Motion to Certify is due to be denied and the Motion to Exclude is due to be termed as moot.

## II.   PRINCIPLES GOVERNING CLASS CERTIFICATION MOTIONS

"Under Federal Rule of Civil Procedure 23, a class action determination is left to the sound discretion of the district court." *Jaffree v. Wallace*, 705 F.2d 1526, 1536 (11th Cir. 1983) (citations omitted).   As a result,"[t]he district court's decision is reversible only when it abuses its discretion."   *Id.* (citation omitted).

In *Cooper v. Southern, Co.*, 205 F.R.D. 596 (N.D. Ga. 2001), the district court set forth the Eleventh Circuit standard applicable to a party trying to establish entitlement to class certification:

> The burden of establishing the specific prerequisites to a Rule 23 action falls on those seeking certification. *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir. 1996); *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir.1984). The Court must be satisfied, after a "rigorous analysis," that the requirements of Rule 23(a) have been fulfilled.   *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1566 (11th Cir. 1987).

*Id.* at 607-08.   These Rule 23(a) prerequisites consist of numerosity, commonality, typicality, and adequacy of representation.   *See* Fed. R. Civ. P. 23(a)(1)-(4) ("One or more members of a class may sue or be sued as representative parties on behalf of all members only if:   (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.").

4

Additionally, Rule 23(b)(3) has its own separate set of certification conditions:

> The two essential requirements of Rule 23(b)(3) are that the common questions "predominate over any questions affecting only individual members" and that the class action procedure be "superior . . . for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "In other words, 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'" *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (citing *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1557-58 (11th Cir. 1989) (quoting *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir. Unit B 1982))). The predominance inquiry under Rule 23(b)(3) is "far more demanding than Rule 23(a)'s commonality requirement." *Id.* (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)).

*Cooper*, 205 F.R.D. at 629 (footnote omitted); *see also* Fed. R. Civ. P. 23(b)(3) ("A class action may be maintained <u>if Rule 23(a) is satisfied and if</u>: . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.") (emphasis added).

Matters for the court to consider when evaluating whether Rule 23(b)(3)'s additional requirements are met include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

## III.   ANALYSIS

### A.   Preliminary Certification Considerations

#### 1.   Requirement of Article III Standing for Proposed Class Representatives

As the Eleventh Circuit has made clear, "analysis of class certification must begin with the issue of standing." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987).   The question of whether an individual has standing to raise a claim is particularly important in the class action context because, before the court ever reaches the question of whether the individual's claims and the class claims will share common questions, it must decide whether the individual has a cognizable claim at all.   As the Eleventh Circuit has observed in a class action lawsuit involving employment claims asserted under Title VII :

[T]here must be an individual plaintiff with a cognizable claim, that is, an individual who has constitutional standing to raise the claim (or claims) and who has satisfied the procedural requirements of Title VII . . . Any analysis of class certification must begin with the issue of

standing and the procedural requirements of Title VII.

*Id.* at 1482; *see also Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 n.20 (11th Cir. 2001) ("[T]he fact that this suit was brought as a class action does not alter [the proposed class representative's] obligation to show that he individually satisfies the constitutional requirements of standing.").  Because an issue of Article III standing "directly implicates federal subject matter jurisdiction," it must be addressed as a threshold matter.  *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1272 (11th Cir. 2003); *Griffin*, 823 F.2d at 1476.

Here, no issues have been raised about Plaintiffs' constitutional standing to assert their conversion claims against T-Mobile.   Moreover, the court, in independently reviewing the record, has not identified any standing problems or other case or controversy concerns, *i.e.*, such as issues of ripeness or mootness, that would preclude Plaintiffs from serving as class representatives.   Therefore, no Article III obstacles exist to this case proceeding as a class action.

### 2. Requirement of Valid Substantive Cause of Action for Proposed Class Representatives

In addition to satisfying Article III standing requirements, each named class representative must also individually assert a valid cause of action.  *See, e.g.*, *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (determining that

because the named plaintiffs' Title VII claims failed due to a lack of qualifications for the jobs at issue and their admissions that they were not discriminated against in denial of those jobs, they "were not proper class representatives"); *id.* at 406 n.2 (deciding that named plaintiffs were not adequate class representatives because it was clear prior to class certification that their individual claims should have been dismissed).  As the Eleventh Circuit observed in *Wooden*:

> [T]he district court is not required to resolve [plaintiff's] class certification request before resolving a challenge to [plaintiff's] individual claim.  If the district court were to resolve a summary judgment in Defendants' favor and in so doing dismiss [plaintiff's] individual claim before ruling on class certification, then [plaintiff] would not be an appropriate class representative.

*Wooden*, 247 F.3d at 1289.  Simply proving standing does not mean that the plaintiff "must, or should, prevail on the cause of action."  *Id*. at 1281.  "Standing" is a threshold determination that is "conceptually distinct from whether the plaintiff is entitled to prevail on the merits" of her individual claim.  *Id.* at 1280.

Here, T-Mobile has previously challenged the merits of Plaintiffs' conversion count in the context of a motion to dismiss. (Doc. 14).  The court rejected T-Mobile's position, finding that Plaintiffs' "allegations meet the *Twombly* plausibility standard with respect to [the] conversion claim."  (Doc. 19 at 7).

However, as part of its opposition to the Motion to Certify, T-Mobile has raised a new issue relating to the merits of Plaintiffs' ability to pursue their conversion count pursuant to Rule 23 due to certain class action waivers which T-Mobile suggests are applicable to each plaintiff.  (Doc. 59 at 3 ("Plaintiffs' Motion must be denied because Plaintiffs contractually waived any right to be [part of a class action].")).  The language on the 2008 standard class action waiver provision that was in effect in 2009 states that:  "**Neither you, nor any other customer, can be a class representative, class member, or otherwise participate in a class, consolidated, or representative proceeding without having complied with the opt out requirements above.**"  (Doc. 59 at 4 (citing Ex. A ¶ 2; Ex. A at Tab 1 ¶ 2)).  In particular, T-Mobile contends that the named plaintiffs are bound by class action waivers because they never opted out from the agreement, despite having the opportunity to do so.  (Doc. 59 at 3).

The problem with T-Mobile's argument is that, having studied the underlying proof offered in support, the court is unable to locate any evidence which substantiates that Ms. Hill is arguably bound by the terms of such a class action waiver.  More specifically, the declaration of Andrea Baca ("Ms. Baca"), a paralegal with T-Mobile's Legal Affairs Department, and the attached evidence expressly relate only to Ms. Robinson and Ms. Crawford.  (*See, e.g.*, Doc. 59 at Ex. A ¶¶ 2-3

(evidence relating to Ms. Robinson); *id.* ¶¶ 8-9 (evidence relating to Ms. Crawford)). Therefore, even assuming that T-Mobile is correct that Ms. Robinson and Ms. Crawford cannot pursue their claims as class representatives because of the effect of any applicable class action waiver(s), Ms. Hill is not so barred due to T-Mobile's complete failure of proof as to her.

Additionally, T-Mobile has not clarified whether Ms. Robinson and Ms. Crawford, who became parties to this lawsuit on April 16, 2010, by way of amendment, are currently customers of T-Mobile or whether (and how) any potentially applicable class action waivers impact upon their ability to be named plaintiffs.    Thus, as this particular objection is perfunctorily made and underdeveloped, especially given T-Mobile's affirmative-defense burden associated with establishing waiver, the court rejects it and proceeds with further analysis of Plaintiffs' Motion to Certify.

### 3.    Requirement of an Ascertainable Class

T-Mobile also argues that the certification is inappropriate because the class proposed by Plaintiffs is not adequately defined.   The nationwide class that Plaintiffs seek to represent is:

> All persons within the United States of America who, within the last six years preceding the date of filing the original complaint in this case, reported a phone lost or stolen to T-Mobile and where T-Mobile later

10

allowed the use of that lost or stolen phone by another person on T-Mobile's network.

(Doc. 54 at 8).

As the pre-*Bonner* Fifth Circuit has held:[2]

It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable. *Weisman v. MCA Inc.*, D. Del., 1968, 45 F.R.D. 258; *Hardy v. United States Steel Corporation*, N.D. Ala., 1967, 289 F. Supp. 200; 3A Moore's Federal Practice (2nd Ed., 1969) P23.04. *See* Rule 23(a), Fed. R. Civ. Procedure. *Cf. Gillibeau v. City of Richmond*, 9 Cir., 1969, 417 F.2d 426. These requirements were not, in our opinion, satisfied. A class made up of 'residents of this State active in the 'peace movement' * * *' does not constitute an adequately defined or clearly ascertainable class contemplated by Rule 23, nor was there any evidence introduced at the hearing on the motion for a preliminary injunction, held May 1, 1970, which would have assisted the district court in more accurately delineating membership in a workable class. Furthermore, even aside from the patent uncertainty of the meaning of 'peace movement' in view of the broad spectrum of positions and activities which could conceivably be lumped under that term, the class defined in Paragraph IV is overbroad in another sense. The activity complained of here, viz. harassment by members of the Houston Police Department under the color of a void city ordinance, could not have a 'chilling effect' on the First Amendment rights of all Texas residents who desire to publicize their particular position on the war in Vietnam outside the City of Houston. In view of the language used in the complaint and the evidence produced at the preliminary injunction hearing, we cannot say that the district court was incorrect in holding that a class action was not maintainable.

_____

[2]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (emphasis added).  More recently, the Fifth Circuit has summarized that "[t]he existence of an ascertainable class of persons to be represented by the proposed class representative is <u>an implied prerequisite</u> of Federal Rule of Civil Procedure 23.  *John v. National Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (citing *Short*, 433 F.2d at 734) (footnote and other citations omitted).

### a.    Overly Broad Class Definition

T-Mobile contends that one problem with the proposed class is that it is overly broad.  More specifically, the definition does not delineate between an unauthorized reactivation of a previously lost or stolen phone from an authorized reactivation such as when a phone is subsequently found by the original owner (after being reported lost to T-Mobile) and then sold to another person for that purchaser's <u>permitted</u> use.  (Doc. 59 at 6).  The court agrees with T-Mobile that this lack of precision is problematic for Plaintiffs.  *See, e.g., John*, 501 F.3d at 445 n.3 ("It is axiomatic that in order for a class action to be certified, a class must exist. Although the text of Rule 23(a) is silent on the matter, a class must not only exist, <u>the class must be susceptible of precise definition</u>.  There can be no class action if the proposed class is 'amorphous' or 'imprecise.'") (quoting 5 James W. Moore et al., Moore's Federal

12

Practice § 23.21[1], at 23-47 (Matthew Bender 3d ed. 1997) (citations omitted)) (emphasis added).

###### b.     Varying Impact of Arbitration and Class Action Waiver Provisions

Another concern  that the court has with the proposed class is that Plaintiffs have made no effort to separate out those putative class members who may very well be barred from pursing class claims due to the existence of valid arbitration agreements or class action waivers that potentially prohibit such litigation.  The definition also does not address those putative class members who may have been subject to either arbitration or the waiver provision but subsequently preserved their right to pursue class claims in court by complying with the applicable opt out requirements.

Adding to the complexity of this issue is that, according to T-Mobile's evidence, the same terms and conditions affecting the waiver and arbitration provisions were not in effect throughout the proposed class period.  (*See, e.g.*, Doc. 59 at Ex. A ¶ 11 ("T-Mobile's Terms and Conditions have included a class action waiver provision since 2001.  Since June 28, 2008, when the 2008 Terms and Conditions became effective, customers have had the ability to opt out of the class action waiver."); *id.*  ¶ 12 ("T-Mobile's Terms and Conditions have included a

provision calling for individual arbitration of disputes since 2001.  Since June 28, 2008, when the 2008 Terms and Conditions became effective, customers have had the ability to opt out of the arbitration provision.")).  Therefore, attempting to refine the class definition in such a manner that will adequately cover these eligibility concerns without creating excessive confusion for the suggested class period (beginning November 5, 2004, *i.e.*, six years before the filing of the original complaint on November 5, 2010) simply becomes unworkable.

The court acknowledges that Plaintiffs have argued in their reply brief that this court should disregard T-Mobile's defenses against class certification based upon the contractual arbitration and class action waiver clauses due to the doctrines of waiver and unconscionability. (*See* Doc. 28 at 1-17).  T-Mobile has contested both of these theories in its sur-reply.  Having studied  the parties' conflicting positions and in the absence of any on-point binding authority, the court is persuaded that neither waiver nor unconscionability prevents T-Mobile from contesting class certification on the basis of a subset of putative class members who may be bound by enforceable arbitration and class action waiver clauses.

### 1)  Waiver

More specifically, as it pertains to waiver,  none of the cases cited by Plaintiffs squarely addresses the situation here.  For example, in *Krinsk v. SunTrust Bank*, No.

8:09-CV-909-T-27EAJ, (M.D. Fla. Mar. 25, 2010), in describing the background of

the case, the district observed:

> <u>Significantly</u>, on August 10, 2009, the parties filed a joint Case
> Management Report. <u>In this report, SunTrust expressly opposed binding</u>
> <u>arbitration</u>. . . .
>
> Three days later, Plaintiff filed a motion for class certification
> with a request that ruling be deferred to enable her to conduct
> class-related discovery. SunTrust filed a 21 page opposition to the
> deferral request, arguing that Plaintiff failed to establish cause for an
> extension, that the request constituted "a brazen attempt to circumvent
> the requirements of Local Rule 4.04," and that allowing additional time
> to conduct discovery would be futile. <u>SunTrust neither mentioned the</u>
> <u>arbitration clause nor that the agreement prohibited class actions once</u>
> <u>a party elected to arbitrate</u>. The following month, SunTrust filed a 20
> page opposition to Plaintiff's motion for class certification. <u>Again,</u>
> <u>SunTrust failed to mention the arbitration clause.  Nor did SunTrust</u>
> <u>contend that a class could not be certified because the claims were</u>
> <u>subject to arbitration</u>.

*Krinsk*, at *2 (emphasis added) (internal citations to record omitted).

Unlike SunTrust in *Krinsk*, T-Mobile  has sufficiently pled these  defenses in

its answers.[3] (*See, e.g.*, Doc. 44 at 2 ("Plaintiffs' claims are barred by the parties'

---

[3]  Thus the court rejects Plaintiffs' unsupported contention that T-Mobile's
failure to explicitly mention the class action waiver clause in its answers constitutes
a waiver of that defense under Rule 8(c).  *See Flanigan's Enters., Inc. v. Fulton
County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an
argument if the party "fail[s] to elaborate or provide any citation of authority in
support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987)
(stating that an argument made without citation to authority is insufficient to raise an
issue before the court); *see also Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th
Cir. 1988) ("However, the <u>liberal pleading rules</u> established by the Federal Rules of

agreements to arbitrate their disputes, which are set forth in the parties' contracts."); ("Plaintiffs' claims are barred by the parties' contracts, including the limits on liability that are set forth in the contracts.")).   Thus, in its answers, T-Mobile expressly mentions the defense of arbitration and implicitly includes the class action waiver provision by referring to the parties' contracts.

Additionally, as the Eleventh Circuit has explained regarding waiver of an affirmative defense:

> We conclude that, given the circumstances presented in this case, the district court abused its discretion by concluding that Fluor waived the borrowed servant defense by failing to plead it separately in its answer.  The general rule of waiver is more easily applied when a party fails to set forth one of the nineteen defenses specifically listed in Rule 8(c); waiver becomes less clear when a party fails to assert affirmatively some "other matter" that pre-existing federal case law has not clearly construed as "constituting an avoidance or affirmative defense" under Rule 8(c).  Here, we can find no pre-existing federal case law in this Circuit discussing Alabama's borrowed servant doctrine under the federal rule.

*Proctor v. Fluor Enterprises, Inc.*, 494 F.3d 1337, 1351 (11th Cir. 2007).  In this instance, the class action waiver provision is comparable to the borrowed servant

---

Civil Procedure <u>apply to the pleading of affirmative defenses</u>.") (emphasis added); *Hassan*, 842 F.2d at 263 ("We must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule [*i.e.*, Rule 8(c)].");  (Doc. 70 at 3 ("Plaintiff has not cited any cases holding that a class action waiver must be specifically asserted as an affirmative defense, and T-Mobile's affirmative defenses were sufficient to put Plaintiffs on notice as to this defense.")).

doctrine in *Proctor* because the defense is not an enumerated item in Rule 8(c). Therefore, the rule of waiver is less "easily applied" to it, and the court must consider "the reality of notice and the reality of prejudice in fact." *Proctor*, 494 F.3d at 1352.

Here, T-Mobile has never disavowed arbitration or the class action waiver and, instead, has made both provisions an integral part of its opposition to the Motion. Additionally, this lawsuit is still in its developing stages, and even assuming that T-Mobile has not sufficiently pled these defenses in its answer, the court should still consider them because Plaintiffs are unable to show any actual prejudice in T-Mobile's raising them, especially at this relatively early juncture of the litigation. *See, e.g., Hassan*, 842 F.2d at 263 ("When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice."); *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797 (11th Cir. 1989) ("Preferred raised the statute of limitations defense in a motion for summary judgment filed in August of 1988, approximately one month before trial."); *id.* at 797-98 ("As a result, plaintiff was fully aware that Preferred intended to rely on a statute of limitations defense."); *Proctor*, 494 F.3d at 1352 ("In addition, Fluor specifically raised the borrowed servant doctrine in its summary judgment motion filed in October 2003, which was long before any trial date had been set or even a pre-trial order entered in October 2005 and indeed more than two

years before the February 2006 trial."); *Proctor*, 494 F.3d at 1352 ("Under these

circumstances, the district court erred in declining to consider whether the plaintiff

actually had been prejudiced by the defendant's failure to plead the borrowed servant

defense expressly in the answer.").

*In re Powe*, 282 B.R. 31 (Bkrtcy. S.D. Ala. 2001) is also strikingly dissimilar.

In *Powe*, the corporate defendant sought leave to amend its answer to include an

arbitration defense "over two years after th[e] adversary was filed[, <u>after</u> a class had

already been certified,] and four months before the trial date." *Id.* at 33. In rejecting

the amendment request, the bankruptcy court reasoned:

> Here, CFC has engaged in extensive discovery and motion
> practice. CFC has attempted to dispose of the case by moving for
> dismissal and for summary judgment. CFC has <u>actively participated in the litigation</u>
> of this case in this Court. "Substantially invoking the litigation
> machinery qualifies as the kind of prejudice to [plaintiff] that is the
> essence of waiver." *E.C. Ernst, Inc. v. Manhattan Const. Co. of Texas*,
> 559 F.2d 268 (5th Cir. 1977); *see also, Stone v. E.F. Hutton & Co., Inc.*,
> 898 F.2d 1542, 1544 (11th Cir.1990) ("Significant prejudice to
> Plaintiff's legal position may be inferred from the extent of discovery
> conducted in this case."). <u>Never has CFC revealed an intent to raise the
> issue of arbitration</u>. CFC was aware or should have been aware that it
> may have had a right to arbitrate some of the claims. To allow CFC to
> raise its right to arbitrate now would prejudice the plaintiffs who have
> spent considerable time, effort and money litigating this matter. That
> effort includes extensive discovery concerning class members who CFC
> now wishes to exclude from the suit.

*Id.* at 33-34 (emphasis added). Therefore, the defendant's dilatory efforts in asserting arbitration while otherwise "actively participat[ing] in the litigation" precluded it from being added as an affirmative defense in *Powe*.

Alternatively, to the extent that Plaintiffs, <u>as individual litigants</u>, may successfully oppose a motion to compel them to arbitrate and also avoid any argument that they are ill-suited to be class representatives because they cannot maintain this class action, due to T-Mobile's "substantial participation" in the ligation, the court agrees with T-Mobile that the record does not substantiate that it has waived these defenses with respect to putative class members (Doc. 70 at 5), which makes consideration of them relevant to the issue of whether the class has been adequately defined as well as other class action inquiries. *Cf. Chevron USA Inc. v. School Bd. Vermilion Parish*, 294 F.3d 716, 720 (5th Cir. 2002) ("Nor does the district court's order affect the rights of appellees vis-a-vis any member of any putative class, because no member of any putative class was before the district court (and none is before this Court) since no class action was certified, and hence no member of any putative class is bound by the judgment."); *Helms v. Consumerinfo.com, Inc.*, 436 F. Supp. 2d 1220, 1227 n.7 (N.D. Ala. 2005) ("Because this court has yet to rule on class certification in this case, a summary judgment ruling against Plaintiff will not bind the as yet unnamed class members.") (citation omitted).

### 2)      Unconscionability

The defense of unconscionability also does not cure the ill-defined class.   As

the Supreme Court of Alabama has explained unconscionability:

> "[T]here is nothing inherently unfair or oppressive about
> arbitration clauses," *Coleman v. Prudential Bache Sec., Inc.*, 802 F.2d
> 1350, 1352 (11th Cir. 1986), and arbitration agreements are not in
> themselves unconscionable, *Ex parte McNaughton*, 728 So.2d 592,
> 597-98 (Ala. 1998).   Instead, unconscionability is an affirmative
> defense, and the party asserting the defense bears the burden of proving
> unconscionability. *Conseco Fin. v. Murphy*, 841 So.2d 1241, 1245 (Ala.
> 2002).

> This Court has stated that " '[a]n unconscionable . . . contractual
> provision is defined as a . . . provision "such as no man in his sense and
> not under delusion would make on the one hand, and as no honest and
> fair man would accept on the other." ' " *Southern United Fire Ins. Co.
> v. Howard*, 775 So.2d 156, 163 (Ala. 2000) (quoting *Layne v. Garner*,
> 612 So.2d 404, 408 (Ala. 1992), quoting in turn *Lloyd v. Service Corp.
> of Alabama*, 453 So. 2d 735, 739 (Ala. 1984), and *Hume v. United
> States*, 132 U.S. 406, 410, 10 S. Ct. 134, 33 L. Ed. 393 (1889)). In *Layne
> v. Garner*, this Court set out four factors it considered important in
> determining whether a contract was unconscionable:

> > "In addition to finding that one party was unsophisticated
> > and/or uneducated, a court should ask (1) whether there
> > was an absence of meaningful choice on one party's part,
> > (2) whether the contractual terms are unreasonably
> > favorable to one party, (3) whether there was unequal
> > bargaining power among the parties, and (4) whether there

were oppressive, one-sided, or patently unfair terms in the contract."

612 So. 2d at 408.

This Court has also recognized a distinction between "substantive unconscionability" and "procedural unconscionability" and categorized the above factors as either substantive or procedural. Substantive unconscionability

" 'relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.' "

*Ex parte Thicklin*, 824 So. 2d 723, 731 (Ala. 2002) (emphasis omitted) (quoting *Ex parte Foster*, 758 So.2d 516, 520 n. 4 (Ala. 1999), quoting in turn 8 Richard A. Lord, Williston on Contracts § 18:10 (4th ed. 1998)). *See also Leeman v. Cook's Pest Control, Inc.*, 902 So. 2d 641 (Ala. 2004).

Procedural unconscionability, on the other hand, "deals with 'procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction.' " *Thicklin*, 824 So. 2d at 731 (quoting Foster, 758 So. 2d at 520 n.4, quoting in turn 8 Williston on Contracts § 18:10).

> To avoid an arbitration provision on the ground of
> unconscionability, the party objecting to arbitration must show both
> procedural and substantive unconscionability. "[A] finding of a
> procedural abuse, inherent in the formation process, must be coupled as
> well with a substantive abuse." 8 Williston on Contracts § 18:10 at 62.

*Blue Cross Blue Shield of Alabama v. Rigas*, 923 So. 2d 1077, 1086-87 (Ala. 2005)

(emphasis added).

Against this backdrop, the court struggles to see how persons subject to T-

Mobile's 2008 contractual provisions and necessarily who had an opportunity to opt

out of arbitration and the class action waiver provisions altogether could establish

procedural unconscionability as a defense to enforcement of those provisions.  In

particular, while neither side has cited to an Alabama case[4] which directly addresses

the effect of an opt out clause, *Rigas* certainly implies that such an option would

mean that procedural unconscionability could not be shown under these facts because,

---

[4] The court acknowledges that the Supreme Court of Alabama has found a termite bond contract with comparable arbitration and class action waiver clauses, but no opt-opt provision, to be unconscionable:

> This arbitration agreement is unconscionable because it is a
> contract of adhesion that restricts the Leonards to a forum where the
> expense of pursuing their claim far exceeds the amount in controversy.
> The arbitration agreement achieves this result by foreclosing the
> Leonards from an attempt to seek practical redress through a class action
> and restricting them to a disproportionately expensive individual
> arbitration.

*Leonard v. Terminix Intern. Co., L.P.*, 854 So. 2d 529, 539 (Ala. 2002).

as to customers under the 2008 framework, a simple inquiry about or reading of the applicable terms and conditions of the contract, together with making a call electing to opt out would remove the arbitration and class action waiver provisions.[5]  *Cf. Rigas*, 923 So. 2d at 1090  ("We cannot conclude that Rigas had 'no meaningful choice' as to whether to enter into the contract that contained an arbitration provision-the Plan-because Rigas has presented no evidence indicating that she was unable to, or even attempted to, secure a health-insurance policy with another company that would not include an arbitration provision or <u>that she attempted to negotiate with Blue Cross or with the Board for the removal of the arbitration provision from the Plan</u>.") (emphasis added).

---

[5]  Thus, at least for the purposes of any Alabama putative class members, the court either finds distinguishable or alternatively disagrees with the non-binding and non-Alabama based cases cited by Plaintiff in their reply brief.  (*See* Doc. 63 at 11-12 (citing and discussing *Clerk v. First Bank of Del.*, 735 F. Supp. 2d 170 (E.D. Pa. 2010); *Gentry v. Superior Court*, 165 P.3d 556, 574 (Cal. 2007) (finding arbitration opt out provision arising in employment context, but also including language that "left no doubt about Circuit City's preference" against exercising the right to opt out to be procedurally unconscionable under California law); *Duran v. Discover Bank*, No. B203338, 2009 WL 1709569 (Cal. Ct. App. June 19, 2009) (applying holding in *Gentry* to agreement between credit card company and cardholder).  However, the fact that the laws from the various jurisdictions will differ in degrees as to procedural and substantive unconscionability further illustrates the difficulty in adequately defining the class because some putative members will be from jurisdictions whose highest courts are either pro opt out provisions, anti opt out provisions (depending upon the attendant circumstances) ... like California, or still undecided ... like Alabama.

*Rigas* also brings into question whether Plaintiffs can show substantive unconscionability for those putative class members falling under T-Mobile's 2008 Terms and Conditions.   Specifically, they have not explained why the 2008 provisions are "grossly favorable to [T-Mobile]" despite the availability of an opt out procedure.  *Rigas*, 923 So. 2d at 1090.  Instead, Plaintiffs focus their arguments on putative class members whose agreements pre-date 2008 without substantiating with any proof that "the bulk of the class members [n]ever had an opportunity to opt out of the class action waiver clause" (Doc. 63 at 13), or explaining how the class definition should be modified to account for these significant differences in the terms of the agreements that will apply to the putative class members.   Accordingly, unconscionability does not fix the problems associated with Plaintiffs' proposed class because it will not universally erase the presence of the arbitration and class action waiver provisions for all putative members.[6]

---

[6]   The court's conclusion reached about unconscionability as an ineffective defense to T-Mobile's arbitration and class action waiver clauses is further bolstered by the United States Supreme Court's recent decision in *AT&T Mobility LLC v. Concepcion*, No. 09-893, ___ S. Ct. ___, 2011 WL 1561956 (Apr. 27, 2011).   In *Concepcion*, the Supreme Court found an anti class action waiver rule developed under California's unconscionability law preempted by the FAA.   *See Concepcion*, at *13 ("Because it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941), California's *Discover Bank* rule is preempted by the FAA.").   *Concepcion* directly refutes the Eleventh Circuit's unpublished decision in *Gordon v. Branch Banking and Trust*, No. 09-15399, 2011 WL 1111718, at * 3 (11th

### c.    Identifying Class Members

T-Mobile also contends that the putative class is not "adequately definite and ascertainable" because Plaintiffs have not articulated how the members of the class can be accurately determined without engaging in a "fact-intensive analysis[.]"  *See Adair v. Johnston*, 221 F.R.D. 573, 577 (M.D. Ala. 2004) ("When individualized fact-finding and litigation would be necessary in order to identify class members, class certification is inappropriate.") (citing *Crosby v. Social Sec. Admin. of U.S.*, 796 F.2d 576, 580 (1st Cir. 1986)).  Plaintiffs rely upon the expert report of Mr. Goudeau, whose opinions are the subject of T-Mobile's Motion to Exclude, in an effort to show that a simple database-based methodology may be used to generate a list of potential class members.

However, even if Mr. Goudeau's opinions about creating a class list using T-Mobile's databases are not excluded, Plaintiffs still have not addressed how to

---

Cir. Mar. 28, 2011), relied upon by Plaintiffs, in which the panel there found (akin to the *Discover Bank* rule in California, *i.e.*, *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 30 Cal. Rptr. 3d 76, 113 P.3d 1100, and the *Leonard* rule in Alabama discussed *supra*, at 22 n.4) a class action waiver to be unconscionable under Georgia law because the recovery (valued at greater than $2,000) "would be exceeded by attorneys' fees and other costs associated with individual arbitration."  Likewise, the type of reasoning utilized in *Concepcion* could also be used to invalidate (as preempted) a state court body of law that found a class action waiver clause or arbitration provision unconscionable despite the presence of an opt out provision for the consumer.

effectively back out from such list (of customers with reportedly lost or stolen phones) those persons who would potentially be ineligible due to the operation of valid class action waivers and/or agreements to arbitrate (and no subsequent efforts made to opt out), absent undergoing an individualized inquiry involving the types of questions that the court posed when evaluating this issue in the context of the named plaintiffs' ability to pursue their conversion claim against T-Mobile.

Therefore, even factoring in any favorable evidence from Plaintiffs' expert witness, the court finds that Plaintiffs' Motion to Certify still fails for want of an ascertainable class.[7]  While the court need not continue with the class certification analysis at this juncture, *see, e.g., Adair*, 221 F.R.D. at 578 ("Because Adair's putative class is not adequately definite and ascertainable[,] . . . .[t]he court need not reach whether Adair's putative class would satisfy the other requirements of Fed. R. Civ. P. 23."), it now addresses whether Plaintiffs are able to meet Rule 23(a)'s threshold requirements as an alternative to its ruling declining certification on Rule 23 preliminary grounds.

---

[7]  Therefore, because the court has considered and not excluded the expert evidence from Dr. Goudeau and yet still finds the element of ascertainment to be lacking, the Clerk is **DIRECTED** to **TERM** as **MOOT**, T-Mobile's Motion to Exclude.  Alternatively, the Clerk is **DIRECTED** to **TERM** as **MOOT** T-Mobile's Motion to Exclude because, as discussed *infra*, other grounds, unrelated to proposing an ascertainable class, support this court's decision to deny Plaintiffs' Motion to Certify.

## B.    Rule 23(a) Threshold Requirements

As outlined below, the court finds that Plaintiffs are unable to satisfy all the threshold requirements of Rule 23(a).

### 1.    Numerosity

"The Eleventh Circuit Court of Appeals has indicated 'while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other facts.'"  *Powers v. Government Employees Ins. Co.*, 192 F.R.D. 313, 316 (S.D. Fla. 1998) (citing *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.), *cert. denied*, 479 U.S. 883 (1986) (quoting Moore's Federal Practice, at 23.05 n.7 (1978))).  Pointing to the absence of any substantiating evidence of numerosity, T-Mobile contests that this factor is satisfied.

The court has studied Plaintiffs' briefing in support of the Motion to Certify. Nowhere within these documents does the court see a citation to proof which evidences numerosity.  For example, while Plaintiffs suggest in their opening brief that "T-Mobile in a given year has in excess of one million reports of lost or stolen phones" (Doc. 54 at 9), "[s]tatements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980).  Moreover, Plaintiffs make no attempt to link this suggested figure to a quantity of purported class members

whose lost or stolen phones have been <u>unauthorizedly</u> used by subsequent T-Mobile subscribers.

Plaintiffs also make no effort to account for those putative class members who waived their right to pursue relief against T-Mobile on a class-wide basis or who are bound by their agreement to arbitrate disputes with T-Mobile. (Doc. 59 at 11-12); *see also discussion supra*, at 14-24.  Equally unhelpful is Plaintiffs' bare allegation in their amended complaint that "[t]he plaintiff class is so numerous that individual joinder of all members is impracticable under the standard of Fed. R. Civ. P. 23(a)(1)." (Doc. 12 ¶ 45(a)); *cf. Short*, 433 F.2d at 734 ("The rest of the paragraph <u>merely tracks</u> the language of Rule 23.") (emphasis added) (footnote omitted); *see also In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ("<u>Mere repetition</u> of the language of Rule 23(a) is not sufficient.") (emphasis added).

As the Eleventh Circuit has previously explained in *Vega v. T-Mobile USA, Inc.*, 546 F.3d 1256 (11th Cir. 2009):

> Vega, in his class certification motion, cited only the deposition testimony of William Steele, T-Mobile's Manager of Sales Compensation Design, in support of his argument for numerosity.  In his testimony, Steele agreed that the number of retail sales associates employed by T-Mobile between the years 2002 and 2006 was "in the thousands."  While this company-wide testimony easily would constitute a sufficient basis for a finding of numerosity as it relates to a nationwide class, the district court, significantly, certified a Florida-only class.  We have noted that, "[a]lthough mere allegations of numerosity are

insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). Nevertheless, a plaintiff still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement. Vega has not cited, and we cannot locate in the record, any evidence whatsoever (or even an allegation) of the number of retail sales associates T-Mobile employed during the class period *in Florida* who would comprise the membership of the class, as certified by the district court.

Yes, T-Mobile is a large company, with many retail outlets, and, as such, it might be tempting to assume that the number of retail sales associates the company employed in Florida during the relevant period can overcome the generally low hurdle presented by Rule 23(a)(1). However, a plaintiff still bears the burden of establishing every element of Rule 23, *see Valley Drug*, 350 F.3d at 1187, and a district court's factual findings must find support in the evidence before it. In this case, the district court's inference of numerosity for a Florida-only class without the aid of a shred of Florida-only evidence was an exercise in sheer speculation. Accordingly, the district court abused its discretion by finding the numerosity requirement to be satisfied with respect to a Florida-only class when the record is utterly devoid of any showing that the certified class of T-Mobile sales representatives "in Florida" is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

*Vega*, 564 F.3d at 1267-68 (emphasis by underlining added) (footnotes omitted).

Therefore, while the court certainly can envision how a nationwide class could meet the not so demanding numerosity standard,[8] in the absence of any proof from

---

[8] Plaintiffs' reply brief makes a better effort to explain how the element of numerosity is likely satisfied by pointing to evidence that "10,111,198 T-Mobile phones were reported lost or stolen between September 2007 and October 12, 2010." (Doc. 63 at 20). Plaintiffs then suggest that "[c]ommon sense tells us that a large

Plaintiffs, this factor, akin to the reasoning in *Vega*, is unfulfilled.  Furthermore, in

the absence of establishing numerosity, Plaintiffs cannot satisfy their Rule 23(a)

burden.

> ## 2.    Commonality

Commonality requires that the grievances of Plaintiffs and the proposed class

share common questions of law or fact.  Fed. R. Civ. P. 23(a)(2).  The commonality

element has been construed by some courts as only requiring that there be <u>one</u> issue

that affects all or a significant number of proposed class members.  *See, e.g.*,

*Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991) ("Rather, the

---

percentage of these were later reactivated by someone else on T-Mobile's network, particularly since T-Mobile's own corporate representative conceded that T-Mobile takes no steps whatsoever to prevent unauthorized users from activating phones on the T-Mobile network."  What is still absent from this analysis is any effort to factor in even an estimate of how many of those putative members might be barred from pursuing class claims due to either an arbitration provision or a class action waiver provision.

Also, Plaintiffs mistakenly cite *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) for the proposition that this court may "make common sense assumptions in order to find support for numerosity."  *Evans* employs no such language.  Moreover, *Evans* involved a <u>conditional</u> certification of employees claiming <u>discrimination</u> in promotional practices, both of which issues significantly factored into the Eleventh Circuit's numerosity assessment. *See id.* at 930 (discussing reasons for finding numerosity element satisfied).

Finally, even assuming that Plaintiffs have shown numerosity, Plaintiffs still are unable to meet all of Rule 23's preliminary considerations and other requirements due to the host of reasons discussed herein.

issue [of commonality] turns on whether there exists <u>at least one issue</u> affecting all or a significant number of proposed class members.") (emphasis added) (citing *Stewart v. Winter*, 669 F.2d 328 (5th Cir. 1982)); *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1385 (N.D. Ga. 1997) (defining common question as "one which arises from a 'nucleus of operative facts,' regardless of whether the underlying facts fluctuate over a class period and vary as to individual claimants") (citations omitted).

The threshold issue of Rule 23(a)(2) commonality is not seriously challenged by T-Mobile.  Instead, the real thrust of T-Mobile's opposition is founded upon a lack of Rule 23(b)(3) predominance.  (*See, e.g.*, Doc. 59 at 13 ("Plaintiffs' request for certification of a nationwide class precludes any finding of commonality, much less predominance.") (quoting from collection of class certification opinions with references to the issue of predominance as opposed to commonality)).  Moreover, the court finds that questions of law and fact which are common to the class do exist, *i.e.*, whether T-Mobile converted the cell phones of Plaintiffs and the purported class members by allowing other subscribers to use them on T-Mobile's network after such phones were reportedly either lost by or stolen from their previous owners.

### 3.    Typicality

The typicality requirement is met when each class member's claims arise "from the same event or pattern or practice and are based on the same legal theory" as the

claims of the  proposed class.  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  As the Supreme Court has noted, the commonality and typicality requirements involve similar considerations and "tend to merge."  *General Telephone Co. of Southwest v.  Falcon*, 457 U.S. 147, 158 n.13 (1982).  "Both serve as  guideposts  for  determining  whether  under  the  particular  circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Id.*

Plaintiffs contend that typicality stems from the same legal theory that they and the class members assert against T-Mobile regarding the subsequent use of their lost or stolen cell phones by subscribers to T-Mobile's network, *i.e.*, conversion.  The court agrees and concludes that typicality is satisfied here for substantially the same reasons that the commonality requirement is met.

### 4.    Adequacy of Representation

The final Rule 23(a) certification prerequisite is adequacy of representation. To meet this requirement, Plaintiffs must show:  (1) that Plaintiffs' counsel is competent to handle the case; and (2) that there are no disabling conflicts of interest among the class members.  *Griffin v. Carlin*, 755 F.2d 1516, 1532-33 (11th Cir. 1985).

T-Mobile has not challenged the qualifications or the experience level of Plaintiffs' counsel.  Moreover, the court has no reason to doubt that Plaintiffs' lawyers "will competently and vigorously prosecute the suit." *Powers*, 192 F.R.D. at 317.  Additionally, other than the class action waiver's impact upon the named plaintiffs ability to pursue their claims (which the court has addressed supra),[9] the record reveals no suggestion that "the interest[s] of the class representative[s] [are] . . . antagonistic to or in conflict with other members of the class." *Id.* (citing *Griffin*, 755 F.2d at 1533).  Accordingly, the court determines that the last Rule 23(a) threshold factor is fulfilled.

Therefore, in sum, the court has found that Plaintiffs' proposed class meets three of the four Rule 23(a) threshold elements.  Because the numerosity element is lacking, there is no reason for the court to proceed with any further analysis. However, the court elects to undergo a consideration of the Rule 23(b)(3) requirements as an alternative to its ruling declining certification under Rule 23(a) as well as the Rule 23 prerequisites to certification.

---

[9]   To clarify the court's prior ruling on Plaintiffs' ability to pursue their conversion claim as part of a purported class proceeding, the court has found against T-Mobile due to its failure to adequately develop the record and affirmatively prove the legitimacy of applying the waiver to all the named plaintiffs.  However, as discussed both *supra* and *infra*, the potential for the class action waiver to broadly apply to putative class members is nonetheless, for other reasons, a significant impediment to Plaintiffs' efforts to represent a Rule 23 nationwide class.

C.     **Rule 23(b)(3) Requirements**

1.     **Predominance**

As the district court in *Powers* summarized predominance:

Rule 23(b)(3) class certification requires that "questions of law or fact common to the members of the class predominate over any questions affecting individual members." *See* Fed. R. Civ. P. 23(b)(3). A complete absence of individual issues is not necessary. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986). However, the predominance requirement is "far more demanding" than the commonality requirement under Rule 23(a). *In re Jackson National Life*, 183 F.R.D. 217. A plaintiff must demonstrate that issues which are subject to generalized proof predominate over issues that require individualized proof. *E.g. Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997).

In addressing the certification question, the Court is required to determine whether variations in state law defeat predominance. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996). To certify a multi-state class action, a plaintiff must prove through "extensive analysis" that there are no material variations among the law of the states for which certification is sought. *See e.g. Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1001 (D.C. Cir. 1986) ("Nationwide class action movant must credibly demonstrate, through an extensive analyses of state law variances, that class certification does not present insuperable obstacles."); *In re: Ford Motor Co. Ignition Switch Products*, 174 F.R.D. 332 (D.N.J. 1997). <u>If a plaintiff fails to carry his or her burden of demonstrating similarity of state laws, then certification should be denied</u>. *Castano v. American Tobacco Co.*, 84 F.3d 734, 742 (5th Cir. 1996) (class action proponents must do more than merely assert that variations in state law are insignificant or academic); *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 341 (N.D. Ill. 1997) (denying class certification because plaintiff failed to carry her burden of demonstrating the similarity of the laws of the thirteen states.).

*Powers*, 192 F.R.D. 318-19 (footnote omitted).

In their opening brief, Plaintiffs failed to analyze, <u>much less extensively so,</u> whether the *prima facie* elements of common law conversion applicable in the fifty states precludes nationwide certification under Rule 23(b)(3). Instead, Plaintiffs contended, without citing any authority, that the elements of common law conversion are uniformly developed and applied nationwide. (*See, e.g.*, Doc. 54 at 3 ("This Court's order denying T-Mobile's motion to dismiss is not only correct under Alabama law governing conversion, it correctly states the law of conversion followed in every jurisdiction in this country, <u>all of whom follow the well-established</u> <u>principles set forth in the Restatement of Torts (2nd) § 222A</u>.") (emphasis added); *id.* at 12 ("That issue is identical in every class member's case –whether identical conduct in identical circumstances <u>violates uniform and well-established state tort</u> <u>law</u>.") (emphasis added)).

In *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004), the Eleventh Circuit summarized the framework to use when a plaintiff seeks to show that certification of a nationwide class premised upon state law claims is appropriate and cited with approval the *Powers* decision:

> "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Castano*, 84 F.3d at 741. It goes without saying that class certification is impossible where the

fifty states truly establish a large number of different legal standards governing a particular claim. *See Sikes*, 281 F.3d at 1367 n.44 ("Assuming that the district court was correct in ruling that the laws of all fifty states apply, that alone would render the class unmanageable."); *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1024 (11th Cir. 1996) ("The appellants cite the need to interpret and apply the gaming laws of all fifty states to assess the legality of each 900-number program as foremost among the difficulties in trying the gambling claims on a class basis, and we agree."); *Kirkpatrick*, 827 F.2d at 725 (upholding the district court's denial of class certification because "the state law claims would require application of the standards of liability of the state in which each purchase was transacted"). *But see In re St. Jude Med., Inc.*, MDL No. 01-1396, 2004 WL 45504, at *4, 2004 U.S. Dist. LEXIS 149, at *12 (D. Minn. Jan. 5, 2004) ("[T]he Court is not convinced that it is per se impossible to certify and successfully try a class action involving the laws of 50 states. . . .").

On the other hand, if a claim is based on a principle of law that is uniform among the states, class certification is a realistic possibility. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 695 (S.D. Fla. 2004) (noting that because "the essential elements of [the plaintiffs'] antitrust claims do not vary significantly from state-to-state, . . . they are susceptible to proof using common evidence"). In *In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation*, for example, the Third Circuit held that class certification was appropriate because "we cannot conceive that each of the forty-nine states (excluding Texas) represented here has a truly unique statutory scheme. . . ." 55 F.3d 768, 818 (3d Cir.1995); *cf. Simon*, 482 F.2d at 883 (declining class certification in part because "the geographical dispersion of the alleged representations would bring into issue various state common law standards. With no single law governing the entire class, common issues of law cannot be shown to warrant Rule 23 treatment.").

Similarly, if the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal

standards can be appropriate.  *See, e.g., Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 315 (3d Cir. 1998) ("Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit."); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (holding that class certification is appropriate where "variations [in state law] can be effectively managed through creation of a small number of subclasses grouping the states that have similar legal doctrines").  In such a case, of course, a court must be careful not to certify too many groups.  "If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law. . . ." *In re Am. Med. Sys.*, 75 F.3d 1069, 1085 (6th Cir. 1996).

The burden of showing uniformity or the existence of only a small number of applicable standards (that is, "groupability") among the laws of the fifty states rests squarely with the plaintiffs. *Walsh*, 807 F.2d at 1017 ("[T]o establish commonality of the applicable law, nationwide class action movants must credibly demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles.") (quotation marks omitted); *Powers v. Gov't Employees Ins. Co.*, 192 F.R.D. 313, 318-19 (S.D. Fla. 1998) ("To certify a multi-state class action, a plaintiff must prove through 'extensive analysis' that there are no material variations among the law of the states for which certification is sought. If a plaintiff fails to carry his or her burden of demonstrating similarity of state laws, then certification should be denied.") (citation omitted); *cf. Carnegie v. Household Int'l, Inc.*, 220 F.R.D. 542, 549 (N.D. Ill. 2004) (declining class certification because "[i]f the laws of the fifty states all follow one of a small number of identical standards, [the named plaintiff] has not made any attempt to prove that this is the case").

*Klay*, 382 F.3d at 1261-62 (emphasis added).

To the extent that Plaintiffs rely upon the court's ruling at the motion to dismiss stage, nothing in that opinion established that the law of conversion is uniformly

applied across the country.  (*See, e.g.*,  Doc. 54 at 20 ("In this case, there is no doubt that plaintiffs' claims are typical of the proposed class – these two plaintiffs both reported their T-Mobile phone as lost or stolen to T-Mobile, and T-Mobile in each instance nevertheless allowed that phone to be activated on its network, <u>an act which this Court has already found constitutes the common law tort of conversion</u>.") (emphasis added)).

Additionally, as analyzed at the motion to dismiss stage, Alabama actually recognizes multiple ways to establish conversion.  (*See* Doc. 19 at 4 (setting forth elements of conversion including "'the appropriation of the thing to the party's own use and beneficial enjoyment, or in the destruction, or in the exercising of dominion over it, in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff, under a claim of title inconsistent with his own'") (citations omitted); *id.* (indicating that conversion must include "'a wrongful taking, or a wrongful detention, or an illegal assumption of ownership, or an illegal user or misuser'") (citations omitted)).  Despite this intra-state set of variations, Plaintiffs have overlooked clarifying which type or types of Alabama common law conversion they contend are suitable for class certification.[10]  Moreover, the multiple forms of

---

[10]   Plaintiffs have similarly left undisclosed which theory or theories of conversion that were advanced at the motion to dismiss stage they contend are suitable for <u>nationwide</u> class treatment.  (*See* Doc. 19 at 4-5 (summarizing the "'three

conversion within the state of Alabama may mean that other states similarly recognize more than one type of that particular tort.  Regardless, and "[u]ndeniably, it falls to the plaintiff to demonstrate the homogeneity of different states' laws, or at least to show that any variation they contain is manageable." *Sacred Heart Health Systems, Inc. v. Humana Military Healthcare Services, Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010) (citing *Klay*, 382 F.3d at 1262).

In their reply, Plaintiffs did set out Alabama common law conversion, and attempted to compare it with the laws from other jurisdictions across the country. (*see* Doc. 63 at 23 ("The detailed legal research underlying our earlier representation to the Court that this nation's conversion law is uniform is attached hereto in the form of an Excel spreadsheet with quotes from the relevant cases from each and every state of the Union. (Exhibit D)"); *see also* Doc. 64 at Ex. D)); *cf. Powers*, 192 F.R.D. at 319 ("Powers . . . merely provides <u>a cursory analysis of the laws of the fifteen states</u> from which the proposed class is comprised.").  In providing this survey, however, Plaintiffs have made no efforts to group similar jurisdictions together or establish that the laws from the various states will all uniformly recognize a conversion claim in the context of a lost or stolen cell phone or other electronic device that is subsequently reactivated to another person without the prior owner's consent.  In particular, the

------

alternative claims for conversion[.]'") (citing Doc. 16 at 5)).

court finds it to be extremely telling that in suggesting that "[t]his case cries out for class treatment" (Doc. 63 at 27), Plaintiffs have not cited to even one opinion in which a court has concluded that a claim of conversion (regardless of the context) is a type of claim that is suitable for Rule 23(b)(3) class action treatment on a nationwide basis.

In sharp contrast to Plaintiffs' minimal showing, T-Mobile has provided the court with a plethora of analysis indicating a lack of nationwide uniformity with respect to the common law tort of conversion, including considerations of a plaintiff's level of interest in the property, a defendant's level of control over the property, a defendant's level of culpability or intent, a defendant's good faith, and a plaintiff's measure of compensatory damages.[11, 12] (Doc. 59 at 14-17). A statute of limitations

_____

[11] Under Alabama law, a plaintiff who proves conversion may also be entitled to recover punitive damages under certain circumstances. *See, e.g., Industrial Technologies, Inc. v. Jacobs Bank*, 872 So. 2d 819, 826 (Ala. 2003) ("'[P]unitive damages [in an action for conversion] are justified when the evidence discloses the conversion to have been committed in known violation of law and of owner's rights, with circumstances of insult, or contumely, or malice.'") (citations omitted). In this action, Plaintiffs do not pray for any punitive award individually or on behalf of the class they seek to represent and instead only expressly ask for compensatory damages from a jury. (*See generally* Doc. 12 at 7-8 ¶¶ (a)-(i); *id.* at 8 ¶ (e) (including as item in prayer for relief "[u]pon a jury verdict, an award of compensatory damages to compensate plaintiffs and the class members")).

[12] The court appreciates that "it is insufficient to defeat class certification under Rule 23(b)(3)" simply because "individualized determinations are necessary

defense to the timeliness of bringing a conversion claim could also vary nationwide.

Against this backdrop of significant state-wide variations in the law, "[t]hese claims

will involve extensive individualized inquiries on the issues of injury and damages-so

---

to determine the extent of damages allegedly suffered by each plaintiff." *See Klay*, 382 F.3d at 1259.  However, as the *Klay* court further elucidates:

> "[I]n assessing whether to certify a class, the Court's inquiry is limited to whether or not the proposed methods [for computing damages] are so insubstantial as to amount to no method at all.... [Plaintiffs] need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 698 (S.D. Fla. 2004) (quotation marks omitted). Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification.

*Klay*, 382 F.3d at 1259-60 (footnotes omitted).  Here, Plaintiffs contend that "[i]n this era of Ebay and other public online sites selling used phones by the millions, determining a particular model phone's value is a relatively simple matter of online research."  (Doc. 63 at 26).  However, they certainly offer no concrete proposal or methodology about how to effectively and accurately manage such online research on a nationwide basis.  For example, when conducting online research, would 2011 be the year to use for establishing the value for a used phone of a certain model or would the year in which the phone was misplaced or stolen be the more appropriate time frame?  Plaintiffs also ignore how individualized issues relating to the age of the phone, what contents or applications were previously on the phone, and whether the original owner was a heavy or light user of the phone, might affect the value of the used phone.  Additionally, Plaintiffs do not address whether loss of use of the phone should be compensable and, if so, suggest how it might be reduced to a formula-type calculation.  All of these damage-related concerns evidence a predomination of individualized inquiries and render the proposed class unfit for certification under Rule 12(b)(3).

much so that a class action is not sustainable." *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1366 (11th Cir. 2002), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131 (2008).

Plaintiffs have further neglected to raise, much less assess, how choice of law or conflict of law rules from each state might have an impact upon the predominance requirement, *e.g.*, should the law where the plaintiff or the class member lives apply, *i.e.*, the forum of the injured party, or should the law where the subsequent T-Mobile subscriber lives apply, *i.e.*, the forum of the new subscriber contract for the missing/stolen phone? *Cf. Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 at 725 n.6 ("Under the Georgia law applicable to these diversity claims, *see Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941), the standard of liability would be determined, as an initial matter, by the law of the state in which the purchaser acquired the security, not of the state from which the shares were sold.") (citations omitted).

While the court acknowledges that T-Mobile has stated that "the Federal Arbitration Act, applicable federal law, and the laws of the State in which [the customer's] billing address in [T-Mobile's] records is located" will provide the governing law (Doc. 59 at 11-12 n.9), this assertion assumes that the choice of law provisions, including the "without regard to conflicts of law rules of that state" clause

(*see, e.g.*, Doc. 59 at Ex. A at Tab 1 ¶ 25), will be uniformly enforceable with respect to all putative class members.  However, the exact scope of that provision's reach in the context of an intentional tort claim that arguably arises outside of T-Mobile's standard subscriber agreement is certainly debatable.  (*See* Doc. 59 at Ex. A at Tab 1 ¶ 25) ("**Choice of Law.**  This Agreement is governed by the Federal Arbitration Act . . . .") (emphasis added)).

Plaintiffs have also failed to factor in the varying impact that class action waivers, agreements to arbitrate, and challenges to such provisions' contractual enforceability as a matter of state law will have on the predominance inquiry.  (*See* Doc. 59 at 11-12 n.9 (discussing state law unconscionability as a potential defense to arbitration under the Federal Arbitration Act)); *see also Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 728 (9th Cir. 2007) (affirming district court's denial of class certification because  defendant's "intent to seek arbitration of the class would necessitate a state-by-state review of contract conscionability jurisprudence"). Accordingly, for all these reasons, individualized issues abound, and Plaintiffs' proposed class does not meet the predominance requirement.

### 2.    Superiority

As *Powers* explained superiority:

> An additional prerequisite to certification under Rule 23(b)(3) is <u>that a class action is superior to other available methods for the fair and efficient adjudication of the controversy</u>. The various state laws that are implicated by certification of a class comprised of insureds from fifteen states militate against a finding that a class action is the superior method for adjudication of this controversy. *In re Jackson National*, 183 F.R.D. 217. *See also Castano*, 84 F.3d at 745 n.19 ("the greater the number of individual issues, the less likely superiority can be established"). This Court would be faced with the insurmountable task of instructing a jury on the law of several states. *See American Medical Systems*, 75 F.3d at 1085 (denying class certification because the district judge was faced with the impossible task of instructing a jury on the relevant law). <u>Plaintiff has failed to address the difficulties posed by the variations and has not proposed any solutions</u>. Accordingly, this Court finds that concerns over the management of the class action negate a finding of superiority.

*Powers*, 192 F.R.D. at 319-20 (emphasis added).

Similarly, Plaintiffs' failure to show uniformity or even groupability (as explained in *Klay*) with respect to common law conversion on a nationwide basis "militate[s] against a finding that a class action is the superior method for adjudication of this controversy." *Powers*, 192 F.R.D. at 319. In particular, Plaintiffs "ha[ve] failed to address the difficulties posed by the variations [of conversion under Alabama law as well as in other jurisdictions] and ha[ve] not proposed any solutions." *Id.* at 320.

Plaintiffs similarly have neglected to suggest how to manage the rather thorny issue of putative class members whose rights to litigate their conversion claims as

part of a class proceeding in this forum may have been cutoff by either a class action waiver provision, an agreement to arbitrate, or both. The absence of a proposal from Plaintiffs on how to handle this complication in the context of a class proceeding is critical because without a plan, the court anticipates that such issue could likely devolve into multiple mini-rulings on contract to see if each putative member is even entitled to participate in a potential class-wide trial on conversion.

Therefore, the court's "concerns over the management of the class action [and Plaintiffs' concomitant failure to identify, much less address how to handle such issues] negate a finding of superiority." *Id.*; *see also Kirkpatrick*, 827 F.2d at 725 (agreeing with district court's reasoning rejection proposed certification of state claims because "the differing standards of liability required by the laws of the various states would render class action treatment unmanageable"); *Sacred Heart*, 601 F.3d at 1184 ("[A] class action containing numerous uncommon issues may quickly become unmanageable.").[13]

---

[13]   The court appreciates that seldom, if at all, can "difficulties inherent in managing the class . . . be the sole reason for denying class certification. However, as is clear from [this court's] analysis, managing the class action has not been the [exclusive] reason for [the] decision [denying] . . . class certification." *Simer v. Rios,* 661 F.2d 655, 678 n.48 (7th Cir. 1981); *see also Klay*, 382 F.3d at 1272 ("This concern [about manageability] will rarely, if ever, be in itself sufficient to prevent certification of a class.").

## IV.   CONCLUSION

In sum, and for the multiple reasons stated above, Plaintiffs have not met their pre-Rule 23, Rule 23(a), or Rule 23(b)(3) burden on seeking nationwide class certification.[14]  Accordingly, Plaintiffs' Motion to Certify is **DENIED**.[15]

**DONE** and **ORDERED** this the 16th day of May, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[14]  While the court acknowledges that, by way of their reply brief, Plaintiffs have come closer to satisfying their multiple Rule 23 burdens than they did initially, their subsequent efforts are still unconvincing due to the overall lack of a rigorously developed evidentiary as well as legal foundation upon which to adequately support their proposed nationwide class.

[15]  As explained *supra*, at 26 n.7, the clerk is **DIRECTED** to **TERM** as **MOOT**, T-Mobile's Motion to Exclude.